UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WALTER MONTEIRO | : |
| | : |
| v. | :  C.A. No. 18-00072-WES |
| | : |
| DEPARTMENT OF JUSTICE, et al. | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court is the Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 by Defendant United States Department of Justice – Drug Enforcement Administration ("DEA") and five unnamed DEA Agents. (ECF No. 25). Plaintiff Walter Monteiro filed an Objection. (ECF No. 31). This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). A hearing was held on May 13, 2020. After listening to the parties' arguments and reviewing the Memoranda and relevant case law, I recommend that the Motion for Summary Judgment be GRANTED.

**Facts**

Pursuant to Local Rule 56(a), Defendant submitted its Statement of Undisputed Facts (ECF No. 26) and Plaintiff responded by filing his Statement of Disputed Facts (ECF No. 29) as well as a Statement of Additional Undisputed Facts. (ECF No. 30). The following facts are gleaned from the parties' submissions. On February 20, 2015 Plaintiff was arrested in Providence Rhode Island. (ECF No. 26 at ¶ 1). Immediately prior to his arrest, Plaintiff was travelling in the passenger seat of a vehicle that was stopped by a marked Providence Police vehicle driven by two

male uniformed Providence Police Officers.  Id. ¶¶ 2, 3.  Plaintiff testified that a third Officer (identified as Officer #3), was present when Plaintiff's passenger door was opened and took Plaintiff to the ground.  Id. ¶ 4.  Plaintiff described Officer #3 as "another cop…another police officer."  Id. ¶ 5.  Plaintiff testified that "as soon as he stepped out to the ground, [he] was lifted up off [his] feet"…"and slammed to the ground."  Id. ¶ 6.  Plaintiff testified that he was grabbed by his shirt, lifted and "slammed" to the ground.  Id. ¶ 7.  He described this as "quick," "so quick," "instantaneously" and "only a few seconds."  Id. ¶ 8.  Plaintiff "do[esn't] know what his name is…[or] what he looks like," and cannot describe Officer #3, stating that he "never got a look at him."  Id. ¶ 9.  A fourth Officer (identified as Officer #4), put his knee on Plaintiff's back.  Id. ¶ 10.  These two Officers (Officers #3 and #4) "were the only two that made physical contact with [Plaintiff]."  Id. ¶ 11.  The only physical force that Plaintiff alleges he was subjected to was being taken to the ground and the application of the knee to the back; Plaintiff further clarified that he was not "kneed in the back," that the contact with his back was "nothing."  Id. ¶ 12.  When Plaintiff was on the ground and the Officer pulled Plaintiff's arm back to place handcuffs on him, Plaintiff felt pain.  Plaintiff felt pain when the handcuffs were applied.  (ECF No. 30 at p. 1).

Plaintiff testified that after getting up off the ground, he was "handed…off to another Providence cop in an SUV," who "drove [Plaintiff] to the [Providence Public] Safety Complex." (ECF No. 26 at ¶ 13).  That SUV was a marked Providence Police vehicle, driven by two uniformed Officers.  Id. ¶ 14.  The person who handcuffed Plaintiff and handed him off to the Providence Officer in the SUV was "in plainclothes" and was either Officer #3 or Officer #4.  Id. ¶ 15.  While Plaintiff observed some of the Officers on the scene in plainclothes or, as he phrased it, "regular clothes," with badges on, Plaintiff did not observe any badge or identifying marks on

the Officer who handed plaintiff off to the Providence Officer in the SUV.  Id. ¶ 16.  Plaintiff "didn't see what agencies they were or anything like that."  Id. ¶ 17.

After the two uniformed Providence Officers transported him to the Providence Public Safety Complex, Plaintiff was seen by a Providence Police Sergeant and transported, again by the same two Providence Police Officers, to Roger Williams Hospital for examination and treatment. Id. ¶ 20.  Plaintiff does not assert that any DEA personnel were involved in any of these actions. Hospital records indicate that Plaintiff was discharged from Roger Williams Hospital at 7:48 p.m., approximately two hours after his arrest.  Id. ¶ 21.  Plaintiff testified that his only known interaction with anyone from the DEA was with an individual he referred to as "DEA guy" who was present the next day (February 21, 2015) at the Providence Public Safety complex with Providence Police personnel at an attempt to question him.  The "DEA guy" did not provide him with any information about DEA's involvement in his arrest.  Id. ¶ 22.

On February 15, 2017, Plaintiff, in fact, sent an administrative tort claim to the DEA.  Id. ¶ 23.  That submission, titled "Presentment of SF-95 Claim for Damage, Injury, or Death," asserted tort claims based on the events of Plaintiff's arrest, arguing that "the arresting Providence Police officers and/or DEA agents used excessive force in apprehending him," specifically based on the assertion that plaintiff "was lifted off the ground and thrown down to the pavement," and that he was diagnosed later that evening at the hospital "with a left clavicle fracture."  Id. ¶ 24. Plaintiff's administrative tort claim was accompanied by over one hundred pages of accompanying exhibits, including the Providence Police arrest report, documents from Plaintiff's criminal prosecution in state court, and medical records.  These records detailed, inter alia, that, on February 20, 2015, Plaintiff engaged in the sale of crack cocaine, receiving $300.00 in DEA

marked and serialized currency, that he was arrested "by PPD/DEA at the intersection of Gifford Street/Laban Street;" that he was found, on arrest, to be in possession of DEA marked currency from the crack sale. Id. ¶ 25.

Plaintiff filed his Complaint in this action on February 19, 2018. Id. ¶ 26. In his Complaint, Plaintiff alleged that he was subjected to excessive force during this arrest, purportedly at the hands of the Providence Police Department and DEA personnel. Specifically, Plaintiff alleged that, during his apprehension and arrest, he was lifted off the ground and then dropped to the pavement, resulting in a fracture to his left clavicle and other injuries. According to Plaintiff, the DEA Agents were (or at least should have been) aware that he had an unspecified condition affecting his right arm that should have precluded them from using what he alleges was excessive force. Plaintiff also alleged that he asked to be taken to a hospital after his arrest on February 20, 2015, but that he was instead taken to the Providence Police Department's Central Station; he did go on to allege, however, that he was ultimately taken to a hospital for examination and treatment. Id. ¶ 27.

Plaintiff pleaded that he filed an administrative tort claim with the United States regarding this incident. Plaintiff's Complaint asserted six separate theories of liability as to the DEA and the five "Doe" Defendants, sounding either in tort or based on 42 U.S.C. § 1983. The tort claims are set forth in Count I: Negligence, Count II: Intentional Tort and Count III: Intentional Infliction of Emotional Distress; each of these three counts is pled as to the five "John Doe" Defendants. The Section 1983 claims are asserted against the five "Doe" Defendants in Count IV, and the DEA itself in Count VI. Count V, which purports to assert a respondeat superior claim as to the DEA, contains language that could arguably be read to plead either tort or constitutional claims. Id. ¶

28.   The parties appeared for a Rule 16 conference before the Honorable Lincoln D. Almond, United States Magistrate Judge, on September 12, 2018.  Id. ¶ 29.  At the September 12, 2018 Rule 16 conference, the United States identified the arresting Agent, on the record, as DEA Special Agent Alan J. Sims.  Id. ¶ 30.

On November 1, 2018, the United States duly served Plaintiff with its initial disclosures in this case, identifying, as required, the names of witnesses (including seven DEA witnesses) likely to have discoverable information relevant to Plaintiff's claims.  The first of these witnesses was Special Agent Sims; in the description of the subjects as to which he had information required by Rule 26(a) stated that "Special Agent Sims placed Plaintiff under arrest on or about February 20, 2015."  Id. ¶ 31.  Plaintiff responded to written Interrogatories propounded by both the DEA and the individual Defendants in City of Providence.  Id. ¶ 33.  Among those discovery requests, Defendant DEA requested, via Interrogatory, that Plaintiff identify, in full and complete detail, "any injuries, disabilities, or other physical, emotional, and/or mental health conditions," allegedly resulting from the events alleged in the Complaint.  Id. ¶ 34.  This Interrogatory also specifically asked Plaintiff to "identify each person or persons who you allege inflicted or was responsible for the injury/condition," alleged.  Id. ¶ 35.  Plaintiff did not object to the Interrogatory.  His Response identified no mental health or emotional injuries of any kind, nor did it identify or describe any individuals responsible for his purported injuries.  Instead, it repeated, nearly verbatim (substituting "I" for "Mr. Monteiro") the factual narrative contained in his SF-95 administrative tort claim.  Id. ¶ 36.  Plaintiff was similarly asked to identify, in an additional Interrogatory seeking the names of facilities, physicians, "psychiatrist[s], psychologist[s], social worker[s], therapist[s]…or other medical, psychological or mental health care personnel," who

treated him.  In response, Plaintiff did not identify any instances of treatment for any emotional injury or resulting physical symptoms; instead, he identified only the physical injuries he claims to have incurred during arrest.  Id. ¶ 37.  Plaintiff's Responses to the Interrogatories propounded by Defendant Robles in the City of Providence matter similarly failed to identify any psychological or mental injury allegedly resulting from the arrest or any treatment, therefore.  Id. ¶ 38.  Those Responses similarly failed to identify any specific individuals allegedly responsible for the conduct Plaintiff alleged, including but not limited to any DEA employees.  Id. ¶ 40.  Discovery in this action has now closed; Plaintiff did not identify any experts or provide any expert disclosures.  Id. ¶ 41.

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties.   Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case."  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains."  Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v.

Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).  An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party."  Id.  (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986).  "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve."  Id.  (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)).  Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party."  Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Discussion**

As noted above, Plaintiff's five-count Complaint sets forth several tort claims along with claims purportedly brought pursuant to 42 U.S.C. § 1983.  In the present case, however, Plaintiff has sued only a Federal agency and its Agents, he has not sued any individuals alleged to have acted "under color of state law."  The first issue, then, is whether Plaintiff has asserted a claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) in this case.  For the reasons that follow, I find that Plaintiff has not.

To begin, the Complaint does not contain any reference to Bivens on its face, but only asserts claims under 42 U.S.C. § 1983. Case law is clear that a Section 1983 claim cannot be brought against federal officers and entities. See McCloskey v. Mueller, 385 F. Supp. 2d 74, 86 (D. Mass. 2005), aff'd, 446 F.3d 262 (1st Cir. 2006) ("[i]t is well-established that a § 1983 action cannot lie against federal officers acting under color of federal law."). However, even assuming, arguendo, that the Bivens claim was properly pled or could be implied, any such claim would not survive this summary judgment challenge because Plaintiff failed to name the individual federal officers before the statute of limitations expired. Uzamere v. United States, No. CA 13-505-S, 2013 WL 5781216, at *13 (D.R.I. Oct. 25, 2013), aff'd (Apr. 11, 2014) (three-year statute of limitations applies to claims under Bivens). In the present case, Plaintiff claims the DEA used excessive force against him during his arrest on February 20, 2015, therefore, the statute of limitations expired three years later, on February 20, 2018. Plaintiff did not substitute actual parties for the "Doe" Defendants within the limitations period, and therefore any potential Bivens claim is time-barred. For all these reasons, I recommend that the District Court find that Plaintiff is foreclosed from pursuing any Bivens claims.

Next, the Court considers Count V of Plaintiff's Complaint, which purports to pursue recovery against the DEA and its Agents under the Federal Tort Claims Act ("FTCA"). The DEA points out that any potential FTCA claim is improper because Plaintiff has sued only the DEA, but not the United States. The DEA goes on to note that Congress' waiver of sovereign immunity for tort claims arising out of the actions of federal employees is conditional on those claims being pursued "against the United States – and only the United States – in its own name." (ECF No. 25 at p. 28). It is without dispute that the proper party for any FTCA claim is the United States.

Accordingly, I recommend Plaintiff be GRANTED leave to substitute the United States as the proper party.

With the United States substituted as the proper party in this case, the next issue is Defendant's contention that the FTCA claim is nonetheless barred by <u>Mucci v. Town of North Providence</u>, 815 F. Supp. 2d 541 (D.R.I. 2011) because the factual underpinnings of Plaintiff's negligence and constitutional claims are the same. In <u>Mucci,</u> the District Court held, "a plaintiff may not advance claims of excessive force and negligence predicated on identical facts." <u>Id.</u> at 548. Instead, "to maintain claims of both negligence and excessive force, a plaintiff must allege at least one fact that is distinct in one claim from the other." <u>Id.</u> While Defendant aptly points out the core holding in <u>Mucci</u>, the case does not apply as readily to the present facts as Defendant suggests. The primary factor differentiating the present case from the claims pursued in <u>Mucci</u> is that this Court has found that Plaintiff did not plainly or impliedly assert a <u>Bivens</u> claim. Because there is no <u>Bivens</u> claim present or implied in the Complaint, Plaintiff is not asserting both negligence and excessive force claims based upon identical facts. While <u>Mucci</u> bars any such attempt by a Plaintiff, the Court has found those simultaneous claims have not been made. Accordingly, <u>Mucci</u>'s holding does not apply.

Finally, the Court must consider the claims against Agent Sims. Through discovery, the DEA disclosed that Agent Sims was "involved in effectuating [Plaintiff's] arrest," and that he "placed Plaintiff under arrest." (ECF No. 12 at p. 4, ECF No. 26 at ¶¶ 30-31). Given these facts and the Court's role at the summary judgment stage, the Court can draw a reasonable inference that Agent Sims was the Officer who restrained and cuffed Plaintiff when Plaintiff "felt pain" and sustained injury during his arrest. Yet even with this inference, Plaintiff's FTCA claim still fails

because Plaintiff has not identified any expert evidence about the relevant standard of care for handcuffing an arrestee, which is essential to Plaintiff's ability to establish that a breach of that standard took place.   Courts in Rhode Island require litigants to establish expert testimony in order to establish the standard of care when that standard is not apparent to a layman.   In its Reply, the DEA argues that "laymen lack familiarity and knowledge regarding the proper use and application of handcuffs in effecting an arrest."   The DEA cites Okpara v. District of Columbia, 174 F. Supp. 3d 6, 12 (D.D.C. 2016) as demonstrative of this requirement.   In Okpara, the Court stated that, "expert testimony is required in a negligence case stemming from the misapplication of handcuffs."   This Court agrees and finds that Plaintiff cannot establish the standard of care for handcuffing an arrestee without expert testimony.   Without establishing such standard, Plaintiff will be unable to prove his claim.

**Conclusion**

For these reasons, I recommend that the District Court GRANT Defendant's Motion for Summary Judgment.   (ECF Doc. No. 25).   Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72.   Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.   See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

   /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 25, 2020